UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

SHEILA ANN ANTHONY,

        Debtor.

_____/

Case No. 08-67511-MBM
Chapter 13
Hon. Marci B. McIvor

SHIRLEY FRANCIS,

        Plaintiff,

v.

Adv. No. 09-4209

SHEILA ANN ANTHONY,

        Defendant.

_____/

## **OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On September 29, 2009, the Court heard oral argument on the Plaintiff's Motion for Summary Judgment. The Court issued an opinion orally from the bench. The Court has concluded that the bench opinion requires written clarification. To the extent that this Opinion differs from the bench opinion, this Opinion is the official ruling of the Court.

The Plaintiff filed a Motion for Summary Judgment with respect to her adversary complaint which alleged non-dischargeability under 11 U.S.C. § 523(a)(4) (embezzlement) and § 523(a)(6)(willful and malicious injury). At oral argument, the Plaintiff clarified that she is pursuing this adversary proceeding in her capacity as Personal Representative for the Estate of Annie Wilson. For the reasons set forth below, this Court GRANTS Plaintiff's Motion for Summary Judgment and holds that the

Defendant has a non-dischargeable debt to the Estate of Annie Wilson in the amount of $44,724.50.

I.

FACTUAL BACKGROUND

Annie Wilson, the mother of the Plaintiff and the Defendant, died on January 6, 1996. Annie Wilson left her estate, in equal shares, to five heirs: (1) her daughter Shirley Francis; (2) her daughter Sheila Ann Anthony; (3) her grandson James Pembroke; (4) her granddaughter Quijohnna Wilson; and (5) her long time friend, Ruby Rembert. Annie Wilson's entire estate was comprised of a family home and its contents, located in Pontiac, Michigan.

At some point in time, the Plaintiff opened a bank account at National City Bank for assets of Annie Wilson's estate. The Plaintiff and the Defendant were both signatories on that account. On September 10, 2004, the Pontiac home was destroyed by fire. At the time of the fire, the Defendant Sheila Ann Anthony and Ruby Rembert were living in the home. Ruby Rembert died in late 2006, without leaving a will. Ruby Rembert does not have any heirs.

The Pontiac home was insured by the Michigan Basic Property Insurance Company. Ultimately, Michigan Basic paid a total of $121,600.00 on the claim for both the structure and the contents of the Pontiac home. Michigan Basic issued the following checks:

(see next page)

| Date | Pay to the Order of | Amt | Endorsement |
|---|---|---|---|
| 9/10/2004 | Sheila Anthony | $ 5,000.00[1] | |
| 11/05/2004 | Gateway Construction | $ 955.00 | |
| 11/17/2004 | Sheila Anthony | $ 2,000.00 | Sheila Anthony[2] |
| 12/16/2004 | Sheila Anthony | $ 5,000.00 | Sheila Anthony |
| 12/16/2004 | Sheila Anthony & Shirley Francis | $25,000.00 | Sheila Anthony |
| 1/11/2006 | City of Pontiac | $ 6,879.00 | |
| 1/20/2005 | Sheila Anthony & Shirley Francis | $26,500.00 | Sheila Anthony & Shirley Francis |
| 1/20/2005 | Sheila Anthony | $ 6,100.00 | Sheila Anthony & Shirley Francis |
| 2/7/2005 | Sheila Anthony & Shirley Francis | $44,166.00 | Sheila Anthony & Shirley Francis |
| TOTAL: | | $121,600.00 | |

The Plaintiff also provided an exhibit entitled Summary of Insurance Proceeds. In that summary, the Plaintiff illustrates the distribution of the above-listed amounts:

---

[1] Sheila Anthony states at her deposition that, right after the fire, she received $5,000 from the insurance company and that she kept $3,000 and gave Shirley Francis $2,000. (Dep. p. 73). The Court was not provided with a copy of this check, although a receipt was provided. Shirley Francis claims that she did not receive the $2,000 and the Sheila Anthony received all $5,000. (See Summary of Insurance Proceeds).

[2] Shirley Francis admits that she received $1,000 of this $2,000 check.

3

| Date | Proceeds to Third Party | Proceeds to Sheila Anthony | Proceeds to Shirley Francis | Proceeds to J. Pembroke | Proceeds to Q. Wilson | Estate Acct |
|---|---|---|---|---|---|---|
| 9/10/2004 | | $5,000.00 | | | | |
| 11/05/2004 | $ 955.00 Gateway Construction | | | | | |
| 11/17/2004 | | $ 1,000.00 | $1,000 | | | |
| 12/16/2004 | | $ 5,000.00 | | | | |
| 12/16/2004 | | $10,000.00 | | | | $15,000 |
| 1/11/2006 | $ 6,879.00 City of Pontiac | | | | | |
| 1/20/2005 | | $10,500.00 | $10,000 | $6,000 | | |
| 1/20/2005 | | $ 6,100.00 | | | | |
| 2/7/2005 | $ 4,000.00 Demolition, etc. | | | $10,000 | $10,000 | $20,166 |
| **Totals** | **$11,834** | **$37,600** $35,166 (Est. Acct) **$72,166** | **$11,000** | **$16,000** | **$10,000** | **$35,166** |

The Plaintiff alleges that the entire amount in the Estate Account was appropriated by the Defendant. The Plaintiff provides copies of the bank statements from the Estate Account to support her allegations. Thus, the Defendant received $37,500.00 directly from Michigan Basic Insurance and $35,166.00 that was in the Estate Account, for a total of $72,766.00.

On November 10, 2008, the Defendant filed for chapter 13 bankruptcy. On February 2, 2009, the Plaintiff filed an adversary complaint alleging non-dischargeability under 11 U.S.C. § 523(a)(4)(embezzlement) and § 523(a)(6)(willful and malicious injury) claiming that the Defendant wrongly embezzled and converted certain insurance proceeds to which she was not entitled.

On June 1, 2009, the Plaintiff filed her Motion for Summary Judgment under both

§§ 523(a)(4) and (a)(6). Under § 523(a)(4), the Plaintiff alleges that the Defendant embezzled funds which the Defendant held on behalf of all of the heirs of the Estate of Annie Wilson. Under § 523(a)(6), the Plaintiff alleges that the Defendant converted funds which were not rightfully hers. The Plaintiff contends that, as a matter of law, the amount the Defendant took from the Annie Wilson's estate, over and above her share, is non-dischargeable. The Defendant, in a cursory response, argues that the Court cannot make a determination that there was embezzlement under § 523(a)(4) or conversion under § 523(a)(6) based on the current record.

II.

STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056 (Rule 56 applies in adversary proceedings). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.

JURISDICTION AND BURDEN OF PROOF

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to dischargeability).

As the party seeking an exception to discharge, Plaintiff bears the burden of proving non-dischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 290 (1991). Even so, the court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor. *In re Rembert,* 141 F.3d 277, 281 (6th Cir. 1998).

IV.

ANALYSIS

The Plaintiff contends that, as a matter of law, the amount the Defendant took from Annie Wilson's estate, over and above her one-fifth share, is non-dischargeable pursuant to § 523(a)(4) and § 523(a)(6).

A.   Defendant's Embezzlement is Non-Dischargeable Under § 523(a)(4).

Section 523(a)(4) provides:

(a) A discharge under section 727,1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4).

Federal law defines embezzlement as "the fraudulent appropriation of property

6

by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Brady*, 101 F.3d 1165, 1172-73 (6th Cir. 1996); *In re Jacobs*, 243 B.R. 836 (M.D. Fla. 2000)(misappropriation of funds constituted "embezzlement" for purposes of § 523(a)(4) where debtor, with specific intent to deprive creditor of funds, diverted commissions received on behalf of creditor to his personal use). To prove embezzlement under § 523(a)(4), a creditor must show that: (1) he entrusted his property to the debtor; (2) the debtor appropriated the property for use other than that for which it was entrusted; and (3) the circumstances indicate fraud. *Brady,* 101 F.3d at 1173.

In this case, this Court finds that the Defendant embezzled amounts owed to the Estate of Annie Wilson. The undisputed facts are that: (1) the Plaintiff entrusted the joint proceeds to the Defendant when the Plaintiff deposited the insurance proceeds payable to the estate, in a joint bank account; (2) the Defendant appropriated the money in that joint account, over and above her share of that money, to pay for her personal expenses;[3] and (3) the Defendant either knew or should have known that, at the very most, she was entitled to only one-fourth of Annie Wilson's estate[4]. The Plaintiff has established all the elements necessary to find the Defendant liable for the amount embezzled from the Estate.

---

[3]It is undisputed that the Defendant received $37,600 directly from Michigan Basic Insurance. For reasons discussed below, that amount exceeds the Defendant's share of the Estate proceeds. All amounts in the bank account should have been distributed to the other heirs.

[4]As stated above, Ruby Rembert is deceased and has no known heirs.

B.  Defendant's Conversion is Non-Dischargeable Under § 523(a)(6).

Under § 523(a)(6), debts for willful and malicious injury are non-dischargeable in bankruptcy. Section 523(a)(6) states:

> (a) A discharge under section 727,1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

In order to establish non-dischargeability of debt based on willful and malicious injury, a court must make separate findings that the resulting injury was both "willful" and "malicious." *Eberhardt v. Comerica Bank*, 171 B.R. 239, 244 (Bankr. E.D. Mich. 1994) (*citing* 11 U.S.C. §523(a)(6)) (emphasis added). The absence of one creates a dischargeable debt. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999).

The Supreme Court has held that an injury is "willful" under § 523(a)(6) if the debtor desired to cause the consequences of his act or if the injury was substantially certain to result. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 466 (6th Cir. 1999). To establish that a debt is nondischargeable under 11 U.S.C. § 523(a)(6), a plaintiff must prove that the debtor not only intended the act that caused the harm but intended the harm. See *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). Thus, § 523(a)(6) bars discharge of debts arising from intentional torts. *In re Trantham,* 304 B.R. 298, 307 (6th Cir. BAP 2004).

The Sixth Circuit has defined the term malicious to mean "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *In re Trantham,* 304 B.R. 298, 308 (6th Cir. BAP 2004)(debtor's deliberate

8

unlicenced use of the patented seeds for the purpose of avoiding payment of license fees was malicious); *In re Sullivan*, 305 B.R. 809, 823 (Bankr. W.D. Mich. 2004)(debtor's usurpation of the corporate business opportunity was malicious as it was done in disregard of debtor's duty of loyalty and without just cause or excuse.)

In this case, this Court finds that the Defendant's action of taking and spending the insurance proceeds owed to the Estate of Annie Wilson, over and above her share, meets the standard required under § 523(a)(6) for "willful" and "malicious". The Defendant's act of taking and spending the proceeds to which she was not entitled constituted conversion. Conversion is an intentional tort. Intentional torts, by definition, meet the "willful" requirement under § 523(a)(6). Michigan law defines conversion as a distinct act of dominion wrongfully exerted over another's personal property that is committed by intentionally dispossessing another of personal property. *In re Hanson*, 225 B.R. 366, 375 (Bankr. W.D. Mich. 1998). In *Hanson*, the debtor was liable for conversion because he took inventory which belonged to a corporation and appropriated it for his own personal use. In the instant case, when the Defendant spent the entire amount of the checks issued to her and spent those funds placed in the Estate Account, the Defendant wrongfully exerted dominion over property belonging to the other heirs of Annie Wilson's estate.

The Defendant's act of spending insurance proceeds to which she was not entitled is also "malicious". The Defendant knew, or should have known, that she took Estate funds far in excess of her share. Her actions were intentional, with knowledge that there were limited funds which needed to be distributed to four other individuals. Accordingly, this Court finds that the portion of the proceeds over and above the amount

to which Defendant was entitled is non-dischargeable under § 523(a)(6).

C.	Determination of the Amount of Non-Dischargeable Debt

As a matter of law, the Court finds that the amount of money the Defendant embezzled/converted from Annie Wilson's Estate is a non-dischargeable debt. The potential fact issue is determining the amount of the non-dischargeable debt. The Plaintiff and the Defendant have multiple and various claims and allegations regarding what they were personally entitled to and what they spent from the Estate proceeds. The Plaintiff argues that the Defendant owes the estate $12,500 for unpaid rent ($500/month for twenty-five months),[5] for property taxes, insurance, and minor repairs on the Pontiac home. The Plaintiff also seeks $3,946.00 as personal reimbursement for what the Plaintiff alleges she spent on their mother's funeral expenses. Additionally, the Plaintiff argues that a majority of the items in the Pontiac home were hers, that the Defendant intentionally disposed of a number of the Plaintiff's items, and that the Defendant appropriated many of their mother's personal effects.

The Defendant also makes numerous claims against the Plaintiff. The Defendant states that she deposited her own personal money in the Estate Account, such as her tax refunds and her checks from work and, therefore, she was entitled to spend from that account. (Dep. p. 92). The Defendant also states that she made significant improvements to the Pontiac home (Dep. p. 49-53) and that she paid the taxes on the home. (Dep. p. 59-61). None of these assertions are corroborated by any documents or

---

[5]It is unclear why the Plaintiff is seeking 25 months of rent.

10

affidavits. Additionally, the Defendant states in her deposition that she felt that she was entitled to a greater portion of the insurance proceeds because the fire left her homeless. Defendant denies having spent the entire amount in the Estate Account.[6]

The finger pointing between the Plaintiff and the Defendant is nothing more than an attempt by the Plaintiff and the Defendant to justify a disproportionate share of the Estate Proceeds. The Court is satisfied that it has all the documentary evidence in this case and that the only additional evidence that would be produced at trial is the self-serving testimony of the Plaintiff and the Defendant. Based on the available evidence, the Estate is not entitled to rent from the Defendant and neither the Plaintiff nor the Defendant is entitled to a disproportionate share of the Estate Proceeds. Each of the remaining heirs, Shirley Francis, Sheila Anthony, James Pembroke, and Quijohnna Wilson, are each entitled to a one-quarter share of the proceeds of the Estate.

Having determined that each heir is entitled to a one-quarter share of the Estate, the Court must determine exactly how much money was in the estate prior to the embezzlement/conversion of the funds by the Defendant.

Specifically, this Court finds that $121,600.00 was distributed to the estate of Annie Wilson. Of that $121,600.00, $11,834.00 was paid over to third parties (Gateway Construction, the City of Pontiac, Demolition). This leaves $109,766.00 for distribution to the four remaining heirs. Accordingly, each heir, including the Plaintiff and the

---

[6]In her deposition, the Defendant testified about withdrawals from the Estate Account which were made either by the Defendant or someone authorized by the Defendant. The only withdrawal which the Defendant specifically denied was a purchase of airline tickets on March 11, 2005 for $500.00. (Dep. p. 87).

11

Defendant, is entitled to $27,441.50 from Annie Wilson's estate.

The Court finds that the Defendant Sheila Anthony has received $72,166.00 of the Estate Proceeds. The Defendant does not dispute that she received $37,600.00 in direct payments from the insurance company and the bank statements from the Estate bank account substantiate that all but an insignificant number of withdrawals were made by the Defendant or someone authorized by the Defendant, for personal use. The bank statements further confirm that between December 16, 2004 and February 7, 2005, insurance proceeds in the amount of $35,166.00 were placed in the Estate account, and that, by June 24, 2005, the Defendant had depleted the account.

Each of Annie Wilson's heirs, including the Defendant, is entitled to $27,441.50, less amounts already received. Through embezzlement and conversion, the Defendant received a total of $72,166.00. Therefore, the Defendant is liable to Annie Wilson's Estate in the non-dischargeable amount of $44,724.50.

V.

CONCLUSION

For the above-stated reasons, the Plaintiff's Motion for Summary Judgment is GRANTED under § 523(a)(4) and § 523(a)(6). The Plaintiff, in her capacity as personal

representative for the Estate of Annie Wilson, is awarded judgment against the Defendant in the amount of $44,724.50.

**Signed on October 06, 2009**

                                     **/s/ Marci B. McIvor**
                                     **Marci B. McIvor**
                                     **United States Bankruptcy Judge**